The next case is under submission. The next case for argument is Clarkson v. Alaska Airlines. We have one counsel on screen and the others in person. Give them a moment to get to the table. All right. I think they're ready. Mr. Taylor, when you're ready, please proceed. Thank you, Judge Beatty. And may it please the Court, Jonathan Taylor for the Plaintiff Appellant Casey Clarkson. I am going to try to reserve four minutes for rebuttal if I can. The defendants can prevail in this appeal only if they can show that the record here, when viewed most favorably to the plaintiff, does not allow for a finding that any military leave at issue is comparable to any type of non-military leave provided by the defendants. They cannot make that showing and they do not even try to do so. And to explain why that is, I think it will be helpful to walk through the four leaves that we maintain are comparable because otherwise it can be a bit obscured. And I want to begin with vacations. And the reason why I want to begin with vacations is the same reason that the defendants avoid any discussion of vacations in their brief. And that's because it's fatal to their position on appeal. The defendants argue that the frequency of the leave matters to comparability because it affects the total amount of leave taken and further, that military leave is voluntary. And the key point here is that even if the jury were to agree, it could still find that vacation leave is comparable. And you can look at their own experts' data on this. That's at pages 154. There's one overriding question that sort of piqued my interest in all of this, and that is comparable to exactly what? Short-term military leave? Military leave in general? So we think the regulation answers this question. And what it requires a court to do, or an employer in the first instance, is to examine the particular stretch of military leave that is at issue in the case and to ask whether that leave, whether it's a short-term leave or a long-term deployment, is comparable to some other form of non-military leave. And here, as I understand your arguments, we're talking about short-term leave. That's correct. Military leave. All of the leave that is at issue in the case is 30 days or less. Now, just because we've taken the position that we think that all of that leave is comparable to the four other comparator leaves, that doesn't mean that the jury is required to agree. Now, the district court declined to narrow it down to a short-term. He said all military leave. That's right. The district court, much like the defendants, it took a categorical approach, which is that you examine the category of military leave, even leaves that are not at issue in the case, even long-term leave, and you take an average, and whatever average you get, you compare that. And the problem with that approach, first of all, it defies the text of the regulation, but then it also leads to the result where if it turns out that there is one long-term deployment among the employees that have taken military leave and you have to have a categorical approach, you are either going to lead to the conclusion that that one leave somehow destroys comparability for all the other leaves, or you're going to come to the conclusion that there still might be a possibility that the category of leave could be comparable, and then that would defy the plain text of the regulation, which specifically says that a long-term leave is not going to be comparable to a short-term form of non-military leave. And so I think the only approach that makes sense, at least when it comes to the durational factor, is a more individualized assessment. If the particular stretch of leave at issue in the case, that's consistent with what the Seventh Circuit said about this, it's consistent with the approach taken by many other courts, and I think it's the right approach under the text of the… leave with short-term military leave. That's right, and I think if you look at the defendant's own expert's data at pages 154 and 155 of the supplemental excerpts of record, you'll see that the numbers here, it's almost uncanny how much they resemble one another. I mean, even the 99th percentile leave, the duration is exactly the same for short-term military leave and for vacation, it's 22 days. And so I think it has to be the case that the jury could find that at least some of the military leave at issue in the case, and we think all of it, is comparable in duration to vacations. And then even on the frequency component, I'll call it, it's not an enumerated factor, but the defendants take the position that it should be considered and in fact be given dispositive weight. But even if a jury would agree that it's relevant to the analysis, they could still find that there's comparability here because the frequency of vacation leave and short-term military leave is pretty similar. It's like just over three for vacations and just under six for short-term military leave. And I think more importantly, if you look at the total amount of leave taken by all pilots with respect to these two categories, which is what the defendants say should matter, that's the reason why frequency should factor into the analysis in their view. It affects the total amount of leave taken, which in turn affects costs. Here, the amount for vacation is an order of magnitude more than the short-term military leave at issue in this case, and yet the defendant has decided to provide paid leave for vacations. And our modest position is that a jury could easily look at this data and reasonably find that the leaves are comparable. And that finding, I'll just note parenthetically, wouldn't mandate fully paid leave for all the military leave at issue in the case. It would just subject the benefit to the same cap on the number of days that could be taken per year. It's like starts at 15 days or something quite modest, and that aligns with the amount of military leave that the federal government provides. And so I think this court has to vacate and remand just given that theory of comparability, which the defendants say nothing about. I mean, the only response they have is in a footnote, footnote 3 on page 14 of their brief. They say that vacations somehow aren't part of the case because they weren't expressly mentioned in the complaint. But as we point out on page 13 of our reply, the complaint references comparable forms of non-military leave like jury duty, bereavement leave, and sick leave. And then we ask the court to put short-term military leave on par with jury duty, bereavement leave, sick leave, and other forms of comparable leave. And as this court has repeatedly held, Rule 8 doesn't require a complaint to plead specific legal theories so long as the other side receives notice as to what is at issue in the case. And we plainly did that here. The only reason we identified vacations as a comparator of leave is because the defendants decided to take the litigating position that military leave is actually voluntary. And so we said, here's another category of leave that is voluntary. And so if a jury would agree with you on voluntariness, they could find comparability with respect to vacations. And there is no argument that the defendants didn't have fair notice as to this. Why don't you take up one of the other issues, which is, let's say, jury duty. Yeah, so I'm happy to address jury duty head-on. I would note that for the same reasons as vacation leave, sick leave should also be found to be comparable because similar frequency, similar duration, all the way down the line. But now you get to the last two leaves, which is, as Judge Paez, as you just asked about jury duty leave and then bereavement leave, which I think is somewhat analogous in terms of the key metrics like frequency and duration. And these two comparator leaves, including jury duty leaves, they're comparable as to each of the three factors that are specifically mentioned in the Department of Labor's regulations. So the duration, the purpose of the leave, and the ability of the employee to exercise some control as to whether or when to take the leave. And that position is consistent with the Department of Justice litigating position in Woodall, which is also a pilot class action like this one. It's consistent with the Third Circuit's approach in Waltermeyer. It's consistent with Rogers. And the defendants effectively concede as much in their brief. On page four, they concede that at least some of the military leave addition in this case may be found to be comparable to jury duty leave. And so the only question left is whether it would be unreasonable for a jury to look at the record and say that the three most important factors are the three that have been identified by the Department of Labor, and they're all comparable, and so the leaves are comparable. And we think the answer to that question has to be yes. And the two points that I would try to underscore here, one is that frequency, we don't take the position that a jury is precluded from considering frequency if it finds that that should be relevant to the analysis. We have a more modest position, which is that it's not in the text of the statute. It's not in the text of the regulation. It is a defining feature of reservist life. And because it has no basis in the text of the statute, it should not be given dispositive weight as a legal matter in the analysis, and that if you were to do so, as the district court did below, it would either nullify the statute or it would, at a minimum, discourage military service, which is at odds with the express congressional purpose underlying USERRA. And the better way, in our view, to address the concern that animates this instinct to latch on to frequency is to give careful attention to something that is actually in the text of the statute, which is the relevant right or benefit that is generally provided to employees on some comparable leave and really ensuring that that right or benefit is given equally to those in military. You wanted to say five minutes, but I have one last question for you,  that is, there was one issue that the district court didn't reach, and that is whether paid leave was a benefit. Do we need to even touch that issue? So we don't think this court has to do that. I mean, the most minimalist course, I think, would be to vacate the grant of summary judgment to the defendants and to remand with instructions, I guess, for the district court to take up that issue in the first instance and then to address the remaining issues that were briefed below. I do think because it's a purely legal question and it's been injected into the case by the defendants and it was pressed by the defendants below, I suppose this court, if it wanted to, could reach the question, and there might be some value to doing that, given that there are a couple of other pending cases in the district court that raise similar issues. But we think that this issue has been decided into thorough and scholarly opinions by the Seventh and Third Circuit, and there's just no way that the defendant can distinguish their position from the losing position in those cases, and that position should be rejected by this court for the same reason that it was rejected by the other courts, and that it's just entirely atextual. Okay. All right. Thank you, and we'll reserve the remainder of your time. Thank you very much. All right. Mr. Medlitsky? Thank you, Your Honor, and may it please the court, Anton Medlitsky for Alaska and Horizon. I just want to start with what I think the question in the case is. I think the question in the case is when the CBA, between Alaska and its pilot union, or Horizon and its pilot's union, provides pay during, let's say, jury duty leave, but not during pilots' military leave, is Alaska treating like leaves differently, which is impermissible, or is it treating the leaves differently because they are materially different? And it seems to me that the undisputed facts answer that question because the leaves here are incomparable across every relevant factor. Pilots take orders of magnitude more military leave than, for example, jury duty leave. It doesn't matter whether you look at just all military leave or you look at short-term military leave, what they call short-term military leave, which is military leaves of 30 days or fewer. The numbers aren't even close. Even if you look at what they call short-term military leave, compare the average over the class period per pilot, 142 days versus 6 days of jury duty, 12 days of bereavement leave. Those numbers aren't even close, and it seems to me that no reasonable jury could conclude that they're comparable. And it's not just duration, frequency, although I don't like thinking of those things separately. It seems to me that they're part of the same analysis, the aggregate duration of the leaves, which is obviously the thing that employers are going to look at when they're trying to decide whether two leaves are comparable. But if you look at control, people don't have control over when they take bereavement leave or sick leave or jury duty leave. They have substantial control over when they take military leave. And the purposes of the leaves are very different. Now, I was surprised that my friend was focusing on vacation leave, which was not even mentioned in their complaint. But the reason vacation leave is not relevant to – is not comparable to military leave, setting aside how much vacation pilots normally take, is that the purpose is completely different. Walter Meyer, their main case, expressly held in footnote 3 of that case that vacation leave was not a relevant comparator because vacation leave, as Walter Meyer said, is earned time away from work, or as the Supreme Court explained in Foster case. This is 420 U.S. 101. Vacation is a reward for and respite from a lengthy period of labor. So those kinds of leaves are not comparable at all, which is why, again, the Third Circuit and Walter Meyer, which is the case on which 4316b was based, expressly held that it's not comparable. And the purpose of military leave is – at least military leave for pilots, which is what we're talking about here. Military leave for pilots at Alaska and Horizon is substantially different than even jury duty leave. I think jury duty and military leave are the closest in terms of purpose. But still, military leave has, of course, the public purpose of allowing people to serve in the military, but military leave at Horizon and Alaska also has this additional purpose of allowing people – of allowing pilots to pursue an entirely separate career. Pilots – Mr. Clarkson testified that he flies for the military 10 to 12 days a month, right, and military leave allows pilots to be able to do this entirely separate career. And I think the combination of these things, first of all, make it impossible for any reasonable jury to conclude that leaves are comparable, but they also have a real practical impact on an airline's operations, because the claim that they're making is that because Alaska provides, you know, paid jury duty, for example, for a day or two every few years, it now has to provide pay on top of the pilot's military leave. So double pay for every one of the – you know, it's around 30 days a month, which is two months – excuse me, 30 days a year, which is about two flying months for a pilot of paid military leave. And because pilots have substantial control over when they take military leave and they have substantial incentive to take military leave as opposed to things like jury duty or obviously bereavement, if Alaska is now required to provide pay on top of their military pay, they're going to create a substantial incentive for pilots to actually create conflicts using the control they have to do that, right? And so now Alaska pilots are going to have an incentive to, you know, take military leave on a day they're scheduled to fly, and that's a total disaster when your business model is people have to show up, the pilot's crew have to show up for the flight so that the plane takes off on time. And it seems to me that there's nothing in USERRA and there's nothing in any case that remotely suggests that USERRA requires that sort of result. So the district court at the get-go said, well, just all these non-military leave options on the table just aren't as a matter of law comparable to military leave. To military leave for pilots at Alaska and Horizon. Right, military leave Alaska, whether it be short-term or just military, you know, a six-month stint. He just collapsed everything together. Well, that struck me as incorrect. So I think, Your Honor, again, nothing much turns on this distinction between looking at all the military leaves and looking at just the category of 30 days to one day military leave. Once he made that determination, then he didn't really have to go on and look at the usual one. Well, let me explain why it doesn't matter, and then I'll explain why I think he was right anyway. So it doesn't matter because if you just look at these numbers, even if you just look at short-term military leave, with respect to jury duty and bereavement, it's still orders of magnitude different. I mean, there's no dispute over the actual numbers. And so the reason why my friend doesn't want you to look at frequency is if you just take the average of a single instance of military leave and you only use 30 days to one day of military leave, then I don't remember what the number is, but let's say it's something like five. And then if you take five and you compare it to bereavement leave, they say maybe a jury will find that they're comparable. Now, I don't think even that is true because of the other factors. But let's say it's true. Then the consequence of that would be that everybody between everybody that takes 30-day leaves, 29-day leaves, down to one-day leave would collect, right? They'd collect damages, which is, first of all, doesn't make any sense. Just because a five-day leave is comparable doesn't mean somebody taking a 30-day leave should collect. And this is a class action. They promised the district court that all this could be decided on a class-wide basis. So I think that analysis doesn't make, that kind of analysis doesn't make very much sense. I think they've also said in their appellate briefing that you could go leave by leave, like actually look at one-day leaves, look at two-day leaves, but you for sure can't do that because that's inconsistent with the class mechanism. And it's not what they argue below. You can't even compare, I don't think, a single two-day leave to, let's say, jury duty because some two-day leaves a pilot is going to have a lot of control over, for example, proficiency flying. Some two-day leaves they'll have less control over if it's, you know, schedule annual drill. So you can't look at individual leaves. That's totally inconsistent with the class mechanism. And so in any event, if you look, so you have to look at frequency because frequency tells you the total amount of leave that a pilot is going to take or frequency combined with duration is going to tell you the total amount of leave that a pilot is going to take over any given period. If you don't look at that, you're going to have this one-day leave or five-day leave if it's comparable. Then the pilot is going to be paid for every one of the five-day leaves they take. So if they take 30 days of leave a year, if it's broken up into 15 two-day leaves, their theory is that the pilot should get paid for all 30 days. Let me ask you this. What do you think Congress was up to when they passed USERRA? The entire statute or just this provision? Somebody must have brought this out to their attention, called this to their attention, what you're saying, what you're arguing. I think my argument is reflected in it. The way I see your argument is that USERRA really doesn't have any play here. Oh, no, not at all, Your Honor. It's just that pilots' military leave is very unique. I don't know of any other type of— We have a volunteer military now. Sure. I mean, Congress has to be concerned about how we're going to make this voluntary military work. Right. So I think to directly answer your question, what Congress was thinking of, we know, when it was enacting this provision, 4316B, was the Walter Meyer case in the Third Circuit. And there's a few aspects of the Walter Meyer case that I think are crucial. So one is that the duration of the leave there didn't really matter that much because Mr. Walter Meyer was only asking for one day of holiday pay. And the way that the benefit worked at Alcoa, his employer, is you had to work the entire week in which a holiday fell to get paid for the holiday. Unless, for example, you were on jury duty that week, then you'd still get paid. But the leave in that case was, I think, a nine-day leave. It could have been a one-day leave. It wouldn't have mattered because if he was on—if he had a one-day leave, you know, during the week of the holiday, he wouldn't have gotten paid. So the Court barely even mentioned that. The other point was, in Walter Meyer, that he had absolutely no control over when to take the leave. Right. That's why it mattered that the leave fell on a holiday. He had to—on a holiday week, he had to take the leave that week. But now imagine that Mr. Walter Meyer had come in and made a claim like the plaintiff is making here. At first, he said, well, I could have scheduled my leave not on this holiday week, but I just decided to schedule it on the holiday week, and I think I should collect anyway. And second, I'm not just asking for one day of holiday pay. I'm now asking because you provide jury—pay during jury duty, I'm asking for pay for every one of the nine days that I'm on military leave. Now, the Walter Meyer Court expressly held that they were not deciding—that they were not adopting that rule. But that would be the equivalent of the claim they're making here. And not only that, imagine Mr. Walter Meyer said, I don't just take one of these leaves a year, as was true in that case. I take four or five of these leaves a year. And so because you provide pay jury duty leave, you know, one day every few years for your employees, now you have to pay me for 30, 35, 40 days of military leave. It seems to me if that—oh, and not only that, you don't have to just pay me the difference. You have to pay me my entire Alcoa salary on top of what I make from the military. So that now I—now because I have substantial control over when I take military leave, I have an incentive to take even more. Right? It seems to me that that case—there's no way, it seems to me, that the Third Circuit would have allowed that claim to go forward. They even balked at just the idea of requiring paid military leave because there was pay jury duty leave. Yet that is the claim that they're making here. And there is no case that supports that proposition. The regulation certainly doesn't support that proposition. I think they're arguing that you don't have to look at the frequency of military leave, but that doesn't make any sense. You know, the recent Seventh Circuit case, I think it's right at the end of Judge Wood's opinion. She says, you know, that case is primarily about whether or not paid leave was a benefit under USERRA. Right. But in the end, she says, you know, all these other leaves in play are really factual issues that need to be decided by the jury. Well, you know, that's often true. But in this case, given the undisputed facts, it seems to me that no reasonable jury could conclude that they're comparable. I mean, if you just look— You know, I understand that's a basis for granting summary judgment in favor of, you know, the moving party. But there's a lot of data in this record that you're asking me to say, okay, as a matter of law, what they produced, they lose. Well, but the only data that matters, I think, is, one, you look at the amount of leave and you compare them. Two, you look at the amount of control that a pilot has over military leave relative to things like jury duty and bereavement and the like over which they have no control, or vacation over which they have total control, which is also different from military leave. And you look at the purposes of the leave. Those are the things that the regulation tells you to look at. And when you look at those, I don't think there's any dispute that a pilot has substantially more control over military leave than they have over when they take jury duty. What about the circumstances where they don't have control? You mentioned various types of military duty that pilots have. Some of it is they have a great deal of control in scheduling, and some they do not. So if it's this annual training that they have to do, they have no control. It's not voluntary at that point. They have to do it. Would they be entitled to military leave? So I don't think so because actually they have, even when there's a scheduled military service, they can alter their airline schedule. They only fly about half the days of the month and avoid the military service. So they have control on both sides of the equation, and so they really do have a ton of control over when to take military leave, even if they don't have full control over when to take military service. But just to take a step back, I think the answer to your question is, you have to be able to look at these leaves in the aggregate, right? First of all, they litigated this as a class action. So I don't see how consistent with the class mechanism you could look at each individual pilot's leave in each circumstance and decide whether there was a USARA violation. But also just as a practical matter, when an employer or an employer negotiating with the union is considering how to structure their leaves, it seems to me that they should be able to look at these leaves in the aggregate. So when they're looking at jury duty, they can say, you know, this happens once every few years, etc., etc. There's no control over when pilots take it. Providing pay isn't going to create a lot of operational burdens. And now compare that to military leave, which pilots, pilots in particular, take a huge amount. They have a lot of control. Providing paid military leave would create an incentive to exercise that control to create conflicts with the airline schedule. And when I'm looking at those in the aggregate, are they alike or are they different? It seems to me, obviously, they're different. And so the employer should be able to do that analysis and find that they're not required by USARA to structure their military leave in a manner that provides pay. Now, I don't think you actually have to decide that issue in this case because this is a class action, right? There is a class certified, so you can't sort of divvy up different types of leaves, different individual leaves, and all that. But I think if you're asking just as a basic matter, I still think it makes sense, and I don't see anything in the statute to the contrary, to allow employers and unions and the like to just look at these leaves as a general matter so that once they make that decision, are these leaves similar or are they different, they're not subject to suit every time there's an atypical case. All right. We've taken you over time. Thank you. Thank you, Your Honor. Thank you, and may it please the Court, I'll try to be brief here, just a few quick points in rebuttal. I'd like to pick up where my friend left off, and that is by focusing on the aggregate amount of leave taken, which is the defendant's purportedly neutral justification for discriminating against these different kinds of leave. And the point to underscore here is that that purportedly neutral reason doesn't work with respect to two of the comparator leaves, sick leave and vacation leave. If you look, again, at the defendant's own experts' statistical evidence of pages 154 and 155, you'll see that in the aggregate, pilots take a heck of a lot more vacation leave and sick leave than they do even long-term military leave, even all-military leave. And so if that's the only justification that's been forward, I mean, if this were a different kind of discrimination case and the only justification advanced by a defendant for discriminatory treatment didn't work as a factual matter, it wouldn't just be that the defendant wouldn't receive summary judgment, but the plaintiff actually would, and we're not even asking for that much. And so I think at a minimum, given the way that they've defended the case, I think that shows why it has to go to the jury. My friend says, well, no, the reason that it should be different here is that if you look at vacations, for example, it has a different purpose. And I suppose it has a different purpose in that the airlines have made the decision to provide paid military leave. I'm sorry, excuse me, paid leave if you're drinking pina coladas poolside in Cancun, but if you're serving in the military and receiving pilot training and serving your country, that that isn't sufficiently important to justify paid military leave, even though it would cost a tenth of the amount. And I think that a jury could look at that and say that that isn't enough to override all other indicia of comparability. And I think, you know, the defendants take such a particular view of comparability, even with respect to purpose, that they think jury duty leave isn't even comparable, even though all of the cases hold the opposite. And I just think that shows that on their view of how this statute works, it has no practical effect because nothing could ever be comparable. I didn't hear any answer, even though we mentioned it repeatedly in our reply brief, on the other side as to what leave they even think could be comparable. And I think that shows why their position can't be correct. My friend says that the practical effect here is double pay. And I would just make two points on this. One is this resembles an argument that the defendants are making below with respect to a different issue. They are maintaining that they are entitled to an offset in the amount of military pay received by the class members here, and that relatedly the relevant benefit that must be provided equally here is differential pay, not full pay, because that's what Congress intended. And those questions await the district court on remand. They're not an issue in this appeal. And in any event, I would also note that when Congress enacted USERRA, it knew that reservists received pay from the military, and yet it still wanted them to receive all the rights and benefits from their employer that the employer gives for other leaves. The federal government, many state governments, and many large employers like Walmart or JPMorgan Chase typically provide between 15 and 30 days of paid military leave per year, and there's no concern about a windfall. Further, the federal government provides military leave because Congress requires it to do so, even though, again, Congress knows that reservists are already paid by the military. So Congress itself was in trouble when it came to federal workers with any concern about double pay. And so I just don't think that can be enough to shoehorn a factor that's not in the regulation, which itself construes a term that's not in the text of the statute, and to say that that somehow renders comparability impossible. And yet that's the defendant's position. The better approach, we think the only one that is permissible under the statute and regulation, is to submit this question to a jury. If there are no further questions. All right. Thank you. We'll take this case under submission. Thank you, counsel, for your arguments this morning.
judges: PAEZ, BADE, Gilliam